Consolidated case numbers 20-5550, 20-5551, and 20-5552. Sharon Potter et al. versus Commissioner of Social Security. Arguments not to exceed 15 minutes per side. Ms. Simpson, you may proceed for the appellants. Good morning. Morning. May it please the court. Emma Simpson for plaintiff appellants. I'd like to reserve four minutes for rebuttal. Very well. The question here is whether American pipe tolling renders the plaintiff's lawsuits timely and permits them to challenge the government's unlawful and arbitrary actions in redetermining their disability benefits. This court's precedent teaches that their lawsuits are timely. I'd like to turn first to the question of how long Hughes told the plaintiff's  This court's precedent establishes a clear, straightforward, and sensible rule, a denial of a class certification motion that has nothing to do with the merits of class treatment, stops tolling, sorry, a denial of a class certification motion that has to do with the merits of class treatment stops tolling immediately. But a denial that has nothing to do with the merits of class treatment, and that is without prejudice, is essentially a non-event for purposes of American pipe tolling, enabling absent class members to await further adjudication of the class certification issue before taking action. The government proposes a different rule, specifically that any denial of a class certification motion, regardless of the reason, stops tolling. That rule is at odds with this court's precedent and makes very little sense. Just think about what the government's rule would have meant in this case in particular. Judge Lepar stayed Hughes because this court was soon going to resolve the merits of the plaintiff's claims and was going to simplify the case before him. Given the stay, he denied a pending motion for class certification without prejudice to clear his docket. Under the government's rule, absent class members wishing to protect their rights would have been forced to flood the district court with hundreds of duplicative protective lawsuits, only to have those lawsuits immediately stayed for Hicks. That is precisely the sort of needless multiplicity of actions that American pipe tolling seeks to avoid. As I mentioned, the government's rule is also at odds with this court's precedent. Virtue recognizes that a denial of a class certification motion that has to do with the merits of class treatment stops tolling, but a denial of a class certification motion that has nothing to do with the merits of class treatment is irrelevant. And I'd like to what authority do you have for that proposition? So I'd like to point the court to two particular aspects of the court's decision in virtue that underscore that it's virtue. You rely solely on virtue. Virtue is the key is, is the key case here. Recognize I don't, I don't read virtue the same way you do. I see virtue as, as looking at, there was no ruling whatsoever on the motion for class certification. In fact, judge Gibbons in her majority opinion says because no court ever denied the motion for class certification in the Stanford action, we affirm the district court's conclusion that the plaintiff's federal claims were timely filed. That's what I see as the holding in virtue. And I do recognize that judge Gibbons earlier in the opinion uses the phrase, no court has definitively ruled on class certification. I do not see her saying that because there was no ruling on the merits that that is critical. I see you reading that into her opinion, but I don't see her talking about merits. I see her talking about no ruling whatsoever. So what, what, what, what am I missing here? So a couple of points I'd like to make in response first in the fact section of the court's opinion on page 477, the court mentioned that there had been a denial of classification motion based on mootness. And the court didn't see that as an obstacle to a second class action in virtue. The second thing, the second thing I'd like to point out is that in the court's critical discussion, it distinguished Andrews on the ground that in Andrews, there had been a definitive ruling on class treatment, but that in virtue, there had been no definitive ruling. And then in footnote two, the court made clear what it meant by definitive ruling when it said other courts follow the same approach and allow a second class action where there's been no determination regarding the validity of class treatment. So that also underscores that the court by, by definitive ruling, the court had in mind a ruling on the propriety of class treatment. The next thing I'd point out is that the district court in virtue said, although there has been some action taken with respect to class certification, the district court presiding over Stanford never ruled on the propriety of class treatment. The district court then went on to say, even if some ruling could be gleaned from the court's orders in Stanford, that ruling was effectively reversed on appeal when the ninth circuit reinstated the class allegations. Right. Then they reinstated class certification. And then after reinstatement, there was never a ruling on the motion for class certification. And that's, that's what I think is dispositive in virtue that there was no ruling whatsoever. Not that there wasn't a ruling on the merits. In light of the district court's focus on the fact that there had been no ruling prior to the ninth circuit case, but then even if there had the ninth circuit effectively reinstated the class allegations, the fact that this court focused only on the first fact that there had been no ruling, no definitive ruling, which footnote two. But what does definitive mean? I mean, that's kind of ambiguous to me. And to say that that means the merits, I think is a step that's not necessarily there. That's all. I think that footnote two though, clarifies that what the court had might support said after saying there has been no definitive ruling, the court then said other courts follow the same approach and allow a second class action where there's been no ruling on the validity of class treatment. Okay. Now you're ruling it affects Messer because he has to cobble together the appeal periods. And I'm concerned about the ramifications that the motion for class certification has been denied and in Messer it was denied, it was dismissed as moot, but there was a, I think a definitive ruling on class certification. It was dismissed as moot, but you would allow tolling to continue even though there is a, I think a definitive ruling dismissing it throughout the appeal periods and therefore plaintiffs would have all sorts of time to file individual actions down the road. I'm not sure that's equitable and what we're looking at tolling is we're looking at, it's an equitable principle and what is fair and equitable under these circumstances. I'm worried about the ramifications of allowing, you know, years and years of tolling for lots of plaintiffs when a motion for class certification has been denied and tell me why it's equitable for Messer. I think your case is stronger as to the other two plaintiffs that who the action was stayed, but as to Messer, I'm a little concerned. So tell me how it's equitable as to Messer to have tolling here. So on the issue of whether tolling continues during appellate proceedings, I first note that Virtue did find that tolling continued for roughly two and a half year period during which the Sanford plaintiffs appealed an order compelling individual arbitration, suggesting that tolling continues through appellate proceedings. But even just looking at the policies underlying American pipe, American pipe seeks to promote efficient litigation. And often if there's a dismissal of a case prior to a ruling on class certification, it will be because of a threshold issue. For instance, the plaintiff lacks statutory standing. Absent class members may face the exact same threshold issues. And rather than encourage absent class members to file hundreds or thousands of duplicative lawsuits, raising the same issues, it's most efficient to encourage them to await appellate adjudication of the issue that they may share collectively. And then if a lead plaintiff prevails on appeal, it's reasonable to expect that they will continue to press the interests of the class. Ms. Simpson, does it, um, judge, um, Griffin's issues, it surrounds, um, inequitability. Do you, do you care to respond to that particular aspect that the judge Griffin raises, is it in, is it, do you see an, an avenue to treat it as inequitable or, or properly equitable? I think it's equitable because the Supreme Court's recognized that absent class members are reasonably relying on lead plaintiffs and the, and the Supreme Court has said in order to promote the efficiency of class actions, we should encourage absent class members to await adjudication of class certification issues. And so it's reasonable for absent class members to wait for adjudication of those issues before having to take action. So, so I understand that claim with respect to Messer, but it's a little more difficult for me to understand that with respect to the other plaintiffs, honestly, um, because I understand your position virtue controls, but if we disagreed on that point, why would it be reasonable once there's been an actual, once judge the par said, we're not, you know, I'm dismissing this as I am dismissing this, you can refile it later. Now there is no class action. So why is it reasonable for your plaintiffs to rely on someone else? Who's there is no cost action to represent their interests. I mean, there's no cost action anymore. Wouldn't it be a brighter line, which is important in sexual limitations cases to just say, once there's been a dismissal or a denial on any ground. Along the lines of poor circuit took, um, there's no more tolling. So our, our position is that because judge the pars denial of class of the class certification motion had nothing to do with the merits of class treatment. It actually had no real effect on the class action character of the lawsuit. It didn't suggest that the case couldn't proceed as a class action. And so therefore absent class members reasonably continue to rely on that case until there was further adjudication of the class treatment issues. And so the key distinction is between whether there's been a ruling on the will not proceed as a class action, or whether there has just been a non substantive denial without prejudice that suggests the court will adjudicate the class certification issue further. So for example, if counsel were to file a motion for class certification early under a court scheduling order, I see that I'm out of time. Can I finish that answer? Yeah. And I want to know why you're, I know what the rule that you propose is, but tell me why that makes sense and why that's equitable and why we should. I mean, say, say we have an open, a clean slate here and we can do what we want. Tell me why we should do that. So the government's rule would frequently deprive courts and parties of the efficiency gains of class actions. So under the government's rule, if plaintiffs file a motion for class certification and fail to indicate compliance with a meet and confer rule, or file the motion too early under the court scheduling order, and the court says denied without prejudice, you filed this too early under the government's rule, absent class members would be forced to go file hundreds or thousands of duplicative protective lawsuits. Even though nothing about that denial suggests that the case is unlikely to proceed as a class action, even though it is in that circumstance. Entirely reasonable to believe that the court is going to further adjudicate the class certification issues. So if a court denies a class certification motion saying you filed this two months early under my scheduling order, refile at the close of discovery under the government's rule, they say absent class members need to go file their own individual actions at that time, even though there's every reason to expect that the class action may proceed. So when there's a denial that has nothing to do with the merits of class treatment, and that is without prejudice, there's no reason to think that the case has been stripped of its class action character. Okay. All right. I, you have four minutes rebuttal. You'll, you'll have it. Any further questions at this time, Judge Cook? No, thank you. All right. All right. Let's hear from the FLE, counsel for the FLE. Good morning, Your Honor. Janie Lilly for the Social Security Administration. Plaintiffs seek to revive claims that were filed years late on the basis that they can tack on to their tolling period, the Hughes class action, but even under their proposed rule, under which some denials are actual denials and other denials are not for tolling purposes. The denial in the Hughes case stripped that case of its class character. There, Judge Sipar said the exact issue, the only common issue to the putative class in that case will soon be decided. And it will be decided by the Sixth Circuit and Hicks, whose decision will have the exact effect that plaintiffs want. So even under plaintiff's proposed rule, where some class certification denials are considered, have nothing to do with the merits or administrative versus denials on the merits, the decision in Hughes definitively ended the class character of that suit at that point. How does it make any sense, I mean, practically to require the plaintiffs to file individual actions at that point when there's another action here, Hicks, that is pending that will presumably decide this and that this action is not really dismissed or the underlying action is really just stayed pending? Does it make sense to require all these potential plaintiffs that are in the class to file individual actions and to flood the court? Your Honor, it's the- Is that what we want to happen? Your Honor, it's the only rule that makes sense as a matter of the limits on the tolling doctrine. That plaintiffs are not expected to parse individual rulings and predict what will happen in the future. Once a court has denied class certification, that puts all putative class members on notice that it's time to vindicate their individual rights. If they didn't do so, once their agency decision became final, that the rule that a class certification denial in this case puts them on notice is the only one that makes sense. Those putative class members whose claims were untimely could intervene in the Hughes case individually or file their individual actions at that point. Adopting the rule that plaintiffs are to parse or even really that a court is supposed to parse whether a denial was on the merits procedural or administrative as plaintiff's claim is just not workable and makes no sense. But even though Judge Sipar, I guess, used the terminology that the motion for class certification is denied, in effect, what he's doing is he's staying the case, the case is stayed and I'm not sure he had to deny the class certification, but I think it's clear that it's for administrative purposes rather than anything else. I mean, can't we treat the denial here as really a stay under the circumstances and a stay would continue with the tolling, would it not? If Judge Sipar used the language, I hear by stay the motion for class certification, you would agree that the tolling continues, I assume, right? If he had only done that, possibly. Isn't that in effect what he did though? Well, yes, he did. He actually told them they could come back later and renew the motion for class certification and to me that kind of shows that, well, it's obviously without prejudice, but that their, you know, the motion's been put on hold basically. If I may respond, Your Honor, with two points. First, it is clear that Judge Sipar did both. It stayed the individual case, but clearly denied class certification and it did so because the pending Hicks case would resolve the common issue presented by putative class action, either pro or con. There would no longer be a common issue to the putative class at that point, but it is clear that Judge Sipar denied class certification at that point. Moreover, Your Honor, the fact that Judge Sipar invited further proceedings. What was his reason to deny? Your Honor, the reasoning of the order addressed mainly the stay factors, but did say that the exact issue that plaintiffs want decided will be decided soon and that case will have the effect that plaintiffs want to apply to all the putative class numbers in this circuit. Suggest then, Ms. Lilly, wouldn't it? Would suggest and therefore you piggyback. You and you plaintiffs continue to piggyback on that Hicks case. Yes, Your Honor. At that point, you can file if you are untimely at the, you know, at the point that this class certification was denied, then you may piggyback on it only if you maintain your individual rights by intervening or filing individual actions. But Your Honor, the fact that there may be further proceedings or renewed class certification motions has been decided by this court in the Andrews case. They are the court. I'm sorry, counsel. I see the virtue of your rule. Your rule is a bright line rule. If the judge says deny, it's a deny. The judge says only stay. It's a stay. These are statutes of limitation. It makes sense to have bright line rules. Here the judge said deny. So it's a deny. How do you get around virtue? Even if I were attracted to that rule, I don't know that I'm at Liberty to adopt that rule because of virtue. Because how do you get around? Your Honor, there the court was discussing successive class actions. And here, with the exception of Mr. Messer, the court is the court is faced with an individual action after the after that seeking to pend totaling period based on initial class action. But why does that matter? I mean, I understand that's a distinction, but I'm not sure why it's synchronous. Well, Your Honor, there the court's discussion is about whether after a determination on whether class treatment was appropriate, the court could consider a second attempt at that to circumvent the first rule. That's not what's at issue here with respect to the issue we're discussing about the validity of ending tolling at the end of Hughes. But more generally speaking, plaintiff's rule, there was no administrative denial of class certification at issue in virtue of the type that plaintiff suggest happened in Hughes. And so to import. Well, it was the case. I mean, it was dismissed as moot. I mean, I guess that's not administrative, but it's also not on the merits of Rule 23, right? It's not a determination that class that there's not commonality of issues or whatever other, Your Honor, whatever other Rule 23 criteria. Well, Your Honor, respectfully, the discussion in virtue was discussing the predicate class action on remand from the Ninth Circuit, at which point class claims had been restored by virtue of a successful appeal of the mootness ruling. So in that sense, it restored those class claims and nothing of the sort. There's been no successful appeal of class treatment in Hughes or any of the class actions that Mr. Messer seeks to base tolling on. So that that portion of virtue is on all fours with the government's theory that class that tolling of the statute of limitations ends with the dismissal of the case there after the class claims had been restored on remand. There had been no ruling on class certification. That's what the court was referring to. And so tolling was appropriate there. Here, there's simply no basis for using the virtue case to require the court to parse the reasons for the denial of class certification. In some cases, if not others, plaintiff's reading of the single adverb to import an entire doctrine and dichotomy between denial on the merits or for some other reason is strained at the very best. I'm not sure I agree, but okay, your honor. There was no administrative denial in that case. The denial that plaintiffs referred to was simply not part of the discussion in virtue, but even if it were, it was a case where the denial was reversed on appeal and we simply don't have that here. So that's true that the denial was reversed on appeal, but that then depends on the notion that plaintiffs, once there's been an actual dismissal, can take advantage of tolling, but only if the individual plaintiff's appeal is successful. If it's not successful, then they can't. So I guess you should go out and file all these duplicative actions. And then if it turns out that you win on appeal, that the individual plaintiff won on appeal, then you wasted your time. If they lost on appeal, well then, I mean, there's no more action presumably, but I guess I don't understand why the merits of the individual appeal determine the tolling question. Your Honor, the merits of the appeal may determine the tolling period if there's a successful appeal on the denial of class certification, that is the class character has been restored. And in that sense, what happens is that the class claims relate back under a different doctrine to the initial filing of the class claim. But what you're saying is once there's a dismissal, if you're a plaintiff, since you don't know whether or not, if you're a plaintiff who could have been a member of the class, you better go out and file your action right now. Because if that other plaintiff has a bad lawyer, so they don't make the right argument, so they lose on appeal, you've lost your claim because you won't get tolled. Exactly, Your Honor. That reliance on the hypothetical poor lawyer or the bad putative named plaintiff is not reasonable at that point. And as the 11th Circuit has explained in Armstrong, reliance on the possibility of a revived class at some point or the possibility of reversal on appeal is simply not reasonable. And therefore, the only sensible approach is to seek to vindicate your individual rights at that point. We just simply don't know what may happen after the denial of class certification. Even in this case, it was true that one of the named plaintiffs in Hughes declined to proceed as a putative named class member after Hicks. And so plaintiffs who chose not to file timely suits at the outset and are seeking to extend their tolling period and rely on these putative class actions should diligently pursue their individual cases at that point. If the court has no further questions, then we ask that the judge Cook, Judge Larson, any further questions? I'll pipe up if I do. Okay, all right. We ask that the judgment of the district courts be affirmed with apologies. You have four minutes rebuttal. Thank you. I'd just like to pick up on one thing that Ms. Lillie just said about appeals being successful. The 11th Circuit's decision in Armstrong was dealing with a situation in which there had been a denial of class certification on the merits. Courts have recognized that once there has been a denial of class certification on the merits, the balance of interest underlying American Pipe shifts in favor of encouraging absent class members to take action if they wish to protect their rights. And that's because although a decision denying class certification on the merits can be revisited by a district court or could be reversed on appeal, the decision suggests that it's unlikely that the case will proceed as a class action. I'd also like to note that if the court were to ultimately disagree with the plaintiffs on any of these applications of American Pipe tolling, Andrews establishes that equitable tolling in these circumstances would be warranted. Andrews applied equitable tolling in circumstances similar to these here where there was an unclear rule under American Pipe tolling. So if the court were to disagree with us on virtue or were to disagree on whether in the absence of virtue American Pipe supports the rules we propose, equitable tolling would nonetheless be warranted. If it has no further questions, we would ask that you hold the plaintiff's lawsuits timely and reverse the district court's dismissal orders. All right, any further questions? No further questions, then the case will be submitted. Thank you for your argument.